FREDERICK LAVELLE PAINE, Appellant, *v.* THE STATE OF NEVADA, Respondent.

No. 24304

July 7, 1994                              877 P.2d 1025

[Rehearing denied August 12, 1994]

*Nathaniel J. Reed, Ltd.* and *Norman J. Reed,* Las Vegas, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Rex Bell,* District Attorney, and *James Tufteland,* Chief Deputy District Attorney, Clark County, for Respondent.

## OPINION

*Per Curiam:*

This is Frederick Lavelle Paine's second appeal to this court from a sentence of death. In the first appeal, we affirmed the district court's finding that Paine had acted randomly and without apparent motive when he committed murder, but nevertheless vacated the sentence because of the appearance that one of the sentencing judges may have been inattentive during the proceedings. Paine v. State, 107 Nev. 998, 823 P.2d 281 (1991) *(Paine I)*. A different three-judge panel thereafter resentenced Paine to death, thus presenting the occasion for the instant appeal.

Paine now raises six assignments of error as a basis for relief: (1) the district court erred in finding that the murder was committed at random and without apparent motive; (2) the district court erred when it denied Paine's motion to exclude prejudicial photographs; (3) the Nevada death sentencing statute is unconstitutional; (4) Paine was improperly denied the opportunity to withdraw his guilty plea; (5) Paine's second confession was elicited in violation of Miranda v. Arizona, 384 U.S. 436 (1966); and (6) the sentence of death is excessive considering the instant offense and Paine's criminal history. We conclude that Paine's assignments of error are without merit.

## FACTS

On January 9, 1990, Paine and his partner, Marvin Doleman, went to a cab stand in downtown Las Vegas and randomly hired a cab for the purpose of robbing the driver. Upon arriving at the requested destination, Paine drew a gun and shot the driver three times in the head. After robbing the driver of $22.00, Paine and his accomplice fled. Fortunately, the driver survived. Nine days later, the two men decided to randomly rob another cab driver. In the early morning hours of January 19, 1990, the men flagged a cab and instructed the driver, Kenneth Marcum, to take them to a pre-arranged location in Las Vegas. Doleman carried the gun on this occasion in an effort to prevent a shooting incident similar to that which had occurred on January 9, 1990. When the cab arrived at the appointed location, Doleman became nervous and signaled to Paine not to proceed with the intended robbery. Because the robbery was aborted, Doleman dropped the gun and jumped out of the cab when it came to a stop. Marcum turned to see what was happening, and without saying anything, Paine picked up the gun and shot Marcum twice. The wounds were fatal. The two men then absconded with $45.00 and Marcum's wristwatch. Paine later testified that at no time prior to the incident had he intended to shoot Marcum; murder was simply not a part of the robbery plan.

Paine and Doleman were apprehended at the Continental Hotel later the same day, where Paine was immediately informed of his Miranda rights. Paine again received a Miranda caution at the police station and signed a card indicating his understanding of his enumerated rights. Later the same day, Paine provided the police with a ten-minute tape-recorded statement in which he confessed to his involvement in the murder. Paine was readvised of his Miranda rights at the outset of the tape-recorded statement, and he signed a second card indicating that he understood those rights.

Approximately thirty minutes after the first statement was given, Paine was interviewed by a second police detective. Prior to this interview, Paine again indicated that he was aware of his constitutional rights, although the *Miranda* warnings were not repeated at that time. During the second tape-recorded statement, Paine confessed to his involvement in the January 9, 1990, incident.

Paine was charged with one count of attempted murder, one count of murder with the use of a deadly weapon, and two counts of robbery with the use of a deadly weapon. Paine initially entered a plea of not guilty to all four counts. Sometime after a jury sentenced Doleman to death for his part in the murder, Paine attempted to escape from the Clark County Detention Center. After being charged with attempted escape, Paine agreed to plead guilty to the four original charges in exchange for the State's dismissal of the attempted escape charge. Paine was never informed that evidence of the attempted escape would be used against him during the penalty phase of the proceedings.

On August 17, 1990, Paine entered guilty pleas to all four of the original counts. Our review of the district court's canvass reveals that Paine clearly understood he could be sentenced to death for the murder charge. On October 15, 1990, a penalty hearing commenced before a three-judge panel. The panel found two aggravating circumstances beyond a reasonable doubt: (1) the murder was committed while [Paine] was engaged in the commission of a robbery with a deadly weapon, to-wit, a .25 calibre semi-automatic pistol, and the defendant killed Kenneth Marcum in the course of said robbery; and (2) the murder was committed upon one person at random and without apparent motive. The panel also found, as a single mitigating circumstance, the youth of the defendant (age 19) at the time the crime was committed.

The panel concluded that the aggravating circumstances outweighed the mitigating circumstance and sentenced Paine to die by lethal injection. On appeal to this court, Paine contended that the second aggravating circumstance was unsupported by the record, and that one of the three sentencing judges was inattentive during the proceedings. For reasons related to the latter concern, we vacated the sentence and remanded the matter for resentencing. Paine v. State, 107 Nev. 998, 1001, 823 P.2d 281, 283 (1991).

Following our decision in *Paine I,* Paine filed a motion to withdraw his guilty plea, claiming that he did not fully understand its consequences because prior counsel had failed to inform him that three-judge panels return sentences of death more often

than juries. The district court denied Paine's motion without an evidentiary hearing.

A new three-judge panel commenced Paine's second sentencing hearing on September 23, 1992. Prior to the hearing, Paine objected to three photographs that depicted the inside of the cab after the murder was committed. The first photograph was a close-up picture of a trip log and a clipboard that were lying on the seat. The second photograph was a "withdrawn view of the whole front seat area of the cab shot from the driver side doorway," and the third photograph was similar to the second, but shot from the passenger-side doorway. All three photographs revealed some blood, prompting Paine to argue that their effect was more prejudicial than probative. The State agreed to withdraw the passenger-side photograph, and the court admitted the first two photographs. Paine also submitted a motion in limine to exclude evidence of the attempted escape, which had been introduced at the first penalty hearing. Paine argued that he received ineffective assistance of counsel at the time he pleaded guilty because he was not informed that the escape evidence would be introduced at the penalty hearing. He thus contended that he received no benefit from his plea negotiations. The district court agreed that Paine may not have received the benefit of his bargain and granted the motion in limine.[1]

Marvin Etcoff, a psychologist called by Paine, testified that Paine came from a chaotic, dysfunctional and unstable familial environment, and that Paine's mother was a manic-depressive with psychotic components. Etcoff also testified that Paine suffered from Attention Deficit Hyperactivity Disorder (hyperactivity), a generalized anxiety disorder with depressive features, and an avoidant personality disorder with schizoid and antisocial features. Finally, he concluded that Paine was an impulsive person with a great deal of inner anger.

The second sentencing panel found beyond a reasonable doubt that two aggravating circumstances under NRS 200.033 existed: (1) the murder was committed during the commission of a robbery; and (2) the murder was committed upon a person at random and without apparent motive. As mitigating circumstances, the panel found, in addition to the youth of the defendant, that Paine was raised in a dysfunctional family setting, and that Paine had openly and consistently confessed his crimes. In considering both the aggravating circumstances and the mitigating circumstances, the panel found that the former outweighed the latter, and again sentenced Paine to death. This appeal followed.

---

[1]The court found it "wrong, morally wrong" to dismiss the charge yet use the evidence against Paine at the sentencing hearing.

## DISCUSSION

Paine raises several issues on appeal, most of which we will discuss, and all of which we reject as meritless. Paine first contests the district court's finding that the murder was aggravated because it was committed at random and without apparent motive. *See* NRS 200.033(9). In *Paine I,* we held:

> We have previously concluded that a killing may properly be found to be random and without apparent motive if the robbery could have been completed without killing the victim. . . . William Robert Walker, a Las Vegas cab driver who miraculously survived a similar attack by Paine and Doleman on the evening of January 9, 1990, testified that he was shot three times in the head without any warning before Paine and Doleman demanded any money. Furthermore, Paine testified during the penalty hearing that "[t]here was no reason for me to even pull the trigger, you know, in either case." Therefore, we reject Paine's argument as to this issue and hold that there was sufficient evidence to conclude that the killing of Marcum was not necessary to complete the robbery.

*Paine I,* 107 Nev. at 999-1000, 823 P.2d at 282 (citation and footnote omitted). Despite our ruling on this issue in *Paine I,* which is now the law of the case, Paine asks us to reconsider the panel's finding of this aggravating circumstance because "new evidence" adduced at the second penalty hearing indicates that the murder was necessary to complete the robbery, and because our earlier rationale is contrary to the legislative definition of robbery.

In Hall v. State, 91 Nev. 314, 315, 535 P.2d 797, 798 (1975), we stated: "The law of a first appeal is the law of the case on all subsequent appeals in which the facts are substantially the same." Accordingly, we need not reconsider an issue which we have previously decided in this same case. Nevertheless, without attenuating the force and applicability of the law of the case on this issue, we elect to briefly discuss Paine's contention given the gravity of his sentence.

Contrary to Paine's first allegation, the new evidence introduced at the second penalty hearing is not substantially different from that which was introduced at the first penalty hearing. In sum, Paine argues that the murder was necessary to accomplish the robbery because Marcum was "turning around at the time he was shot" and Paine was therefore fearful of being identified. We reject outright Paine's contention that murder becomes a neces-

sary element of a robbery whenever the robbery victim is able to identify his assailant. Our conclusion in *Paine I* that Paine acted randomly and without apparent motive when he took Marcum's life was correct.[2]

Paine's second contention with regard to the aggravating circumstance is that the statutory definition of robbery is inconsistent with our earlier conclusion that murder committed in the course of robbery may be random and without apparent motive whenever the robbery could be completed without killing the victim. *See Paine I*, 107 Nev. at 999, 823 P.2d at 282. NRS 200.380 defines robbery as the "unlawful taking of personal property from the person of another . . . by means of *force or violence or fear of injury* . . . (emphasis added)."[3] Paine contends that *all* robberies can be completed without "killing the victim," and that our rationale is therefore flawed and unsupportable in law. Paine is wrong. There are undoubted numbers of homicides committed in the course of a robbery because the victim resists to the point where elimination of the victim is necessary to the accomplishment of the robbery. In any event, the legislature has elected to make a random, motiveless killing an aggravating circumstance, NRS 200.033(9), and a killing unnecessary to the commission of a robbery may, as here, reflect such a circumstance. As previously noted, Paine himself could not explain why he killed Marcum. This issue is simply without merit.

---

[2]Indeed, the testimony of Paine's own expert is supportive of our ruling:

> It seems to me that he did not set out on those days to kill someone or shoot someone. He set out to rob someone and became extremely anxious and nervous, as his personality characteristics dictate, lost control of himself, and for a reason that I simply don't understand shot these people. He couldn't explain the reason to me. I can't really understand why he would do something like that especially given his inability to even explain himself why he did something like that.

[3]NRS 200.380(1) provides:

> 1. Robbery is the unlawful taking of personal property from the person of another, or in his presence, against his will, by means of force or violence or fear of injury, immediate or future, to his person or property, or the person or property of a member of his family, or of anyone in his company at the time of the robbery. A taking is by means of force or fear if force or fear is used to:
> (a) Obtain or retain possession of the property;
> (b) Prevent or overcome resistance to the taking; or
> (c) Facilitate escape.
> The degree of force used is immaterial if it is used to compel acquiescence to the taking of or escaping with the property. A taking constitutes robbery whenever it appears that, although the taking was fully completed without the knowledge of the person from whom taken, such knowledge was prevented by the use of force or fear.

Paine also assigns error to the admission of the two photographs depicting the front seat of the cab. According to Paine, his guilty plea removes the cause of death from issue and the "gruesome" and "highly inflammatory" photographs have little or no probative value.

The admissibility of photographs is within the sound discretion of the trial court, whose decision will not be disturbed in the absence of a clear abuse of discretion. *See e.g.*, Redmen v. State, 108 Nev. 227, 231-32, 828 P.2d 395, 398 (1992), *cert. denied*, ...... U.S. ......, 113 S. Ct. 229 (1992). It is well settled that photographs depicting the scene of a crime are admissible during penalty hearings. Riggins v. State, 107 Nev. 178, 183, 808 P.2d 535, 538-39 (1991), *rev'd on other grounds*, 504 U.S. 127, 112 S. Ct. 1810 (1992). *See also* NRS 175.552(3) (authorizing the admission of otherwise inadmissible evidence in penalty hearings). Having reviewed the photographs at issue, we conclude that the district court did not abuse its discretion when it ordered them admitted into evidence. The photographs were relevant to the proceedings because they depicted the scene of the crime, and the small amount of blood contained therein does not make them unduly prejudicial and inadmissible.

Paine next contends that the sentencing scheme of NRS 175.558 is unconstitutionally arbitrary and capricious because three-judge panels return death sentences more often than juries.[4] Paine failed to support his argument with credible evidence and we perceive no reliable basis for deviating from our previous determinations on this identical issue. *See* Redmen v. State, 108 Nev. 227, 235-36, 828 P.2d 395, 401 (1992), *cert. denied*, ...... U.S. ......, 113 S. Ct. 229 (1992); Beets v. State, 107 Nev. 957, 967-73, 821 P.2d 1044, 1051-55 (1991) (STEFFEN, J., concurring), *cert. denied*, ...... U.S. ......, 113 S. Ct. 116 (1992); Baal v. State, 106 Nev. 69, 74, 787 P.2d 391, 395 (1990); Hill v. State,

---

[4]NRS 175.558 provides as follows:

When any person is convicted of murder of the first degree upon a plea of guilty or a trial without a jury and the death penalty is sought, the supreme court shall appoint two district judges from judicial districts other than the district in which the plea is made, who shall with the district judge before whom the plea is made, or his successor in office, conduct the required penalty hearing to determine the presence of aggravating and mitigating circumstances, and give sentence accordingly. A sentence of death may be given only by unanimous vote of the three judges, but any other sentence may be given by the vote of a majority.

102 Nev. 377, 380, 724 P.2d 734, 736 (1986), *cert. denied,* 479 U.S. 1101 (1987).

Paine also alleges that use of a three-judge panel in his case was unconstitutional because he was given no opportunity to *voir dire* the panel and he was unable to discover how the panel judges were selected; therefore, according to Paine, he must assume selection of the panel was arbitrary and capricious.

Aside from the reality noted above, that the three-judge sentencing scheme has already been determined to be constitutional, the argument is otherwise without merit. NRS 175.558 enjoins this court to appoint two judges from districts other than that of the judge who presided at the capital defendant's trial to constitute the requisite three-judge panel. Paine's fear that this court selects judges who are partial to sentences of death is not only unsupported, it is unsupportable since it does not occur. Indeed, Paine has made no attempt to support this issue, and we need not consider it.

Moreover, Paine has cited no authority for the proposition that he is entitled to *voir dire* the judges who serve on the panel. A judge is required by the Code of Judicial Conduct to "respect and comply with the law and [to] act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." Canon 2(A). Moreover, NRS 47.250(9), (10) and (16) specify, respectively, as disputable presumptions: "[t]hat official duty has been regularly performed;" "[t]hat a court or judge, acting as such, whether in this state or any other state or country, was acting in the lawful exercise of his jurisdiction;" and "[t]hat the law has been obeyed."

Paine has made no attempt to provide the slightest evidence or support for the proposition that the three-judges sitting on the panel failed in any sense to adhere strictly and honorably to the duties of their office and the solemn assignment undertaken with respect to the sentencing of Paine. There is no basis for counsel engaging in *voir dire* of judges who are knowledgeable with respect to the law and their sworn duties to uphold it. If counsel has any cause to assume bias on the part of any judge, the remedy is to assert a timely challenge to any such judge. No such challenge was made with respect to any of the judges comprising Paine's sentencing panel. This issue is without merit.

Paine also seeks to rely upon the purported unconstitutionality of three-judge panels to argue that the district court erred when it refused to allow him to withdraw his guilty plea. We initially note that our vacation of Paine's first death sentence renders Paine's

motion to withdraw his plea antecedent to the imposition of his second sentence under challenge in the instant appeal. *See* NRS 176.165.[5] We have previously determined the standards required of district courts and this court when reviewing a defendant's request to withdraw a plea:

> It . . . [is] the duty of the trial court to review the entire record to determine whether the plea was valid, either by reason of the plea canvass itself or under a totality of the circumstances approach. As we have held in the past, the trial court should view the guilty plea as presumptively valid and the burden should be on the defendant to establish that the plea was not entered knowingly and intelligently. . . . On appeal from the district court's determination, we will presume that the lower court correctly assessed the validity of the plea, and we will not reverse the district court's determination absent a clear showing of an abuse of discretion.

Bryant v. State, 102 Nev. 268, 272, 721 P.2d 364, 368 (1986) (citation omitted).

Paine contends that his plea was not made knowingly and intelligently because he did not fully understand the assertedly enhanced risk occasioned by placing himself before a three-judge sentencing panel.[6] Although failure to adequately inform a defendant of the consequences of his plea does create a manifest injustice, there was no basis for such an injustice in the instant case because the underlying premise was fallacious. *See* Meyer v. State, 95 Nev. 885, 888, 603 P.2d 1066, 1067 (1979) (manifest injustice occurred when defendant was not informed that the crime to which he plead was not probational). Because the record

---

[5]NRS 176.165 provides as follows:

> Except as otherwise provided in this section, a motion to withdraw a plea of guilty or of nolo contendere may be made only before sentence is imposed or imposition of sentence is suspended. To correct manifest injustice, the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea.

[6]Not surprisingly, Paine's prior counsel supported Paine's argument with the following affidavit submitted to the district court:

> I believe I did not fully inform the Defendant concerning the statistical likelihood of a three judge panel giving a death sentence, i.e., that three judge panels give death sentences almost 100% of the time, because affiant himself was not fully aware of the statistics concerning three judge panels at the time.
> I therefore believe that Defendant may not have been fully informed concerning all facts relevant to his decision as to whether to plead guilty or go to trial, and that Defendant should be allowed to withdraw his guilty plea heretofore entered in this case.

demonstrates that Paine clearly understood that death was a sentencing option for the crime he committed, we are unable to conclude that Paine's plea was not entered knowingly and intelligently.

The record does not support Paine's contention that prior counsel's ineffectiveness with regard to the attempted escape evidence invalidates his plea and the entire penalty proceeding. The United States Supreme Court has recognized that the Sixth Amendment right to counsel includes the right to "the effective assistance of counsel" during the sentencing phase of criminal proceedings. Strickland v. Washington, 466 U.S. 668, 686 (1984) (citing McMann v. Richardson, 397 U.S. 759, 771, n.14 (1970)). The benchmark for measuring any claim of ineffectiveness is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the [sentencing proceeding] cannot be relied on as having produced a just result." *Id.*

In addition to showing that prior counsel committed errors "so serious that [he] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," Paine must show that the deficient performance "prejudiced" his defense. *Id.* at 687.

Paine has failed to show why his prior counsel's alleged ineffectiveness in preventing the first panel from hearing evidence of his attempted escape prejudiced his defense before the second sentencing panel. Indeed, Paine presented no mitigating explanation for his crimes, electing instead to rely upon the mercy of the sentencing panel. Our review of the record provides us with no basis for concluding that Paine's prior counsel was ineffective in representing his client, particularly in light of the overwhelming evidence of Paine's guilt.

Paine also seeks to persuade us that his confession to Marcum's murder was inadmissible because it was induced in violation of *Miranda v. Arizona,* 384 U.S. 436 (1966). Paine's contention is based upon the fact that he was not readvised of his constitutional rights prior to the *second* tape-recorded statement, which transpired "over an hour" after the first statement was given. Paine's position is substantially undermined by the record.

The record indicates that Paine was advised of his *Miranda* rights *three* times prior to the first statement: at the Continental Hotel where he was apprehended; when he first arrived at the police station; and immediately before the first statement was tape recorded. Paine also signed a waiver of his rights twice: when he first arrived at the police station and immediately before the first

statement was tape recorded. The record also shows that the second interview commenced approximately one-half hour after Paine's first interview was completed. Although the second detective did not actually reread the *Miranda* warnings to Paine, he ascertained from the officer who took the first statement that Paine was properly "Mirandized," and thereafter asked Paine if he "had been previously advised of his constitutional rights," to which Paine answered in the affirmative. More importantly, however, Paine's confession to the murder occurred during the *first* tape-recorded interview, and not during the second interview as represented in Paine's Opening Brief. Therefore, Paine's confession to first-degree murder essentially remains unchallenged on appeal.

Paine's last claim of error is that the sentence is excessive in light of his criminal history and the crime for which he stands convicted. The sentencing panel properly weighed the aggravating and mitigating circumstances and found that a sentence of death was justly proportional to the crime Paine committed. *See* NRS 200.030(4); Ybarra v. State, 100 Nev. 167, 176, 679 P.2d 797, 801 (1984), *cert. denied,* 470 U.S. 1009 (1985). We have seen no basis in the record for concluding that the sentencing panel's finding is unjustified by the evidence concerning the defendant and the crime he committed. Finally, we perceive no error in the panel's rejection of all other proposed mitigating circumstances.

In our independent review of the record, we conclude that Paine's death sentence was not imposed under the influence of passion, prejudice, or any arbitrary factor. NRS 177.055(2)(c). We also conclude that Paine's sentence is not excessive "considering both the crime and the defendant." NRS 177.055(2)(d).

## CONCLUSION

For the reasons discussed above, we conclude that Paine's rights have been duly and justly considered, and that he was sentenced fairly and in accordance with the constitutionally valid law of this state. We therefore affirm Paine's sentence of death.