DAVID PELLEGRINI, Appellant, v. THE STATE OF NEVADA, Respondent.

No. 35999

November 15, 2001                    34 P.3d 519

[Rehearing denied March 6, 2002]

*Patricia Erickson,* Las Vegas, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Stewart L. Bell,* District Attorney, and *James Tufteland,* Chief Deputy District Attorney, Clark County, for Respondent.

*Franny A. Forsman,* Federal Public Defender, and *John C. Lambrose* and *Michael L. Pescetta,* Assistant Federal Public Defenders, Las Vegas, as Amicus Curiae.

# OPINION

*Per Curiam:*

In this appeal, we are asked to decide whether NRS 34.726 and its one-year time bar apply to second or successive petitions for post-conviction relief. Appellant David Pellegrini and amicus curiae, the Federal Public Defender, contend that NRS 34.726 applies just to first petitions and that dismissal for delayed filing

of second or successive petitions is governed only by the laches provisions of NRS 34.800. We reject this contention and conclude that NRS 34.726 applies to all post-conviction petitions. We also conclude that Pellegrini's remaining contentions lack merit, and we affirm the district court's order denying his untimely filed and successive post-conviction petition.

## FACTS

Pellegrini was convicted, pursuant to a jury verdict, of the burglary of a Las Vegas 7-Eleven store and the attempted robbery and first-degree murder, both with the use of a deadly weapon, of store clerk Barry Hancock. For the murder, he was sentenced to death.[1] Pellegrini then appealed to this court. In rejecting Pellegrini's contentions on appeal, we concluded that overwhelming evidence supported Pellegrini's conviction. We noted the evidence included eyewitness testimony and a videotape showing Pellegrini's activities in the store area before and after Hancock, who was handcuffed and helpless in a back room of the store, was shot in the head at close-range. We also noted that Pellegrini conceded that he shot Hancock, but testified that he fired the gun accidentally when he stumbled.[2] Ultimately, we affirmed Pellegrini's conviction and death sentence.[3] Remittitur issued on December 13, 1988.

Pellegrini then filed a petition for a writ of habeas corpus in federal district court. The federal court stayed its consideration of Pellegrini's petition pending exhaustion of his claims in state courts.

In December 1989, Pellegrini filed, pursuant to former NRS 177.315-.385, a petition for post-conviction relief in state district court. In December 1990, he filed a supplemental petition. Pellegrini contended that he was deprived of the right to a fair trial and also raised claims of ineffective assistance of trial counsel. The district court agreed to conduct an evidentiary hearing limited to Pellegrini's claim that counsel was ineffective in persuading Pellegrini to testify falsely at trial.

In lieu of testifying at the evidentiary hearing, Pellegrini submitted an affidavit, wherein he stated that due to his intoxicated condition at the time of the crimes, he "had no independent clear recollection of what actually happened when Barry Hancock was shot" and could only partially recall what transpired inside the store. He stated that when he had informed trial counsel of his lack of recall, counsel told him to testify that the gun was cocked

---

[1]*Pellegrini v. State,* 104 Nev. 625, 626, 764 P.2d 484, 485 (1988).

[2]*Id.* at 626-27, 629, 764 P.2d at 485-87.

[3]*Id.* at 632, 764 P.2d at 489.

and "went off" when he stumbled. The district court heard testimony from trial counsel and rejected Pellegrini's claim that counsel had convinced him to testify falsely. On November 5, 1991, the district court entered its order denying relief on all claims raised in the 1989 petition.

On appeal to this court, we rejected Pellegrini's challenges to the district court's order denying the petition. We concluded that the district court's finding that counsel had not persuaded Pellegrini to testify falsely was supported by substantial evidence. We also concluded that the district court did not err in denying the remaining claims of ineffective assistance of counsel without an evidentiary hearing because these "were either 'naked' claims for relief or were repelled by the record." We finally concluded that the denial without an evidentiary hearing of Pellegrini's claims relating to deprivation of a fair trial was proper because these claims were waived when Pellegrini failed to raise them at trial or on direct appeal. We ordered Pellegrini's appeal dismissed on May 28, 1993.[4]

Pellegrini again petitioned for a writ of habeas corpus in federal district court. On March 23, 1999, the federal district court dismissed Pellegrini's federal petition to allow him to exhaust his claims in state courts.

On April 12, 1999, more than ten years after issuance of remittitur on direct appeal and nearly six years after this court dismissed the appeal from his first post-conviction petition, Pellegrini filed a post-conviction petition for a writ of habeas corpus in state district court. In this petition, Pellegrini raised numerous claims of trial court error and ineffective assistance of trial, appellate and post-conviction counsel. Among these were claims that counsel had failed to investigate and present evidence and argument that Pellegrini was not guilty by reason of insanity and was not deserving of a death sentence because he suffered from Multiple Personality Disorder ("MPD") at the time of the crime. In support of the MPD-related claims, he attached a declaration by psychologist Nell Riley, Ph.D. As cause for failing to present his claims earlier, Pellegrini alleged ineffective assistance of trial, appellate and post-conviction counsel.

The State opposed the second petition and argued that it was procedurally barred as untimely under NRS 34.726. The State also argued that appellant's claim that his first post-conviction counsel was ineffective did not warrant relief, and the remainder of his claims were procedurally barred under the waiver provisions of NRS 34.810(1)(b), the successive petition provisions of NRS 34.810(2), and/or under the law of the case doctrine.

---

[4]*Pellegrini v. State,* Docket No. 22874 (Order Dismissing Appeal at 2-3, May 28, 1993).

In his reply, Pellegrini argued that the time bar at NRS 34.726 did not apply to successive petitions for post-conviction relief. He further argued that application of the procedural bars provided in NRS 34.810 would violate his right to due process because this court has inconsistently applied those bars in reviewing appeals from other post-conviction petitions. Finally, he argued that his failure to comply with any procedural bars should be excused because he suffers from MPD and was incompetent and insane at the time of the crime, throughout trial and until the filing of the second petition. Pellegrini admitted that he had been evaluated by three mental health experts prior to trial, but argued that the results of these evaluations were suspect.

In its surreply, the State asserted the procedural bar for laches at NRS 34.800 and argued that the law of the case doctrine precluded consideration of Pellegrini's claims regarding his mental state as a basis to overcome or avoid the procedural bars.

The district court heard argument from counsel and on March 20, 2000, denied the petition. Without addressing the laches bar, the court concluded that all of Pellegrini's claims were or could have been brought within one year of the effective date of NRS 34.726 and/or raised in prior proceedings, and thus Pellegrini's claims were procedurally barred pursuant to NRS 34.726 and NRS 34.810. Pellegrini timely appealed.

## DISCUSSION

### Application of procedural bars to Pellegrini's claims

Pellegrini challenges the district court's determination that his claims were barred under the provisions of NRS 34.726 and NRS 34.810.[5] He does not dispute that, absent a demonstration of good cause and actual prejudice, his claims are barred under a plain reading of these statutes. But, relying primarily on legislative history, Pellegrini and amicus together argue that NRS 34.726 cannot be properly applied to successive petitions. Pellegrini also argues that this court is barred from applying NRS 34.810 to his claims due to what he characterizes as our prior "inconsistent" application of procedural bars. He additionally argues that, even if these statutes may be applied to his successive petition, he was entitled to an evidentiary hearing on his allegations that his noncompliance with the statutory filing requirements should be excused because of his incompetence and insanity. These contentions lack merit.

---

[5]Although the State raised laches under NRS 34.800 as an additional basis for dismissal below, the district court's order did not rely on laches to bar Pellegrini's claims. Because we have determined that the claims are procedurally barred under NRS 34.726 and NRS 34.810, we need not address whether laches may apply here.

NRS 34.726 provides for dismissal of habeas petitions based on delay in filing. It states, in part:

> 1. Unless there is good cause shown for delay, a petition that challenges the validity of a judgment or sentence must be filed within 1 year after entry of the judgment of conviction or, if an appeal has been taken from the judgment, within 1 year after the supreme court issues its remittitur. For the purposes of this subsection, good cause for delay exists if the petitioner demonstrates to the satisfaction of the court:
>
> (a) That the delay is not the fault of the petitioner; and
>
> (b) That dismissal of the petition as untimely will unduly prejudice the petitioner.

NRS 34.810 provides for dismissal based on waiver and abusive filing of successive petitions. It states, in relevant part:

> 1. The court shall dismiss a petition if the court determines that:
>
> . . . .
>
> (b) The petitioner's conviction was the result of a trial and the grounds for the petition could have been:
>
> (1) Presented to the trial court;
>
> (2) Raised in a direct appeal or a prior petition for a writ of habeas corpus or post-conviction relief; or
>
> (3) Raised in any other proceeding that the petitioner has taken to secure relief from his conviction and sentence, unless the court finds both cause for the failure to present the grounds and actual prejudice to the petitioner.
>
> 2. A second or successive petition must be dismissed if the judge or justice determines that it fails to allege new or different grounds for relief and that the prior determination was on the merits or, if new and different grounds are alleged, the judge or justice finds that the failure of the petitioner to assert those grounds in a prior petition constituted an abuse of the writ.[6]
>
> 3. Pursuant to subsections 1 and 2, the petitioner has the burden of pleading and proving specific facts that demonstrate:
>
> (a) Good cause for the petitioner's failure to present the claim or for presenting the claim again; and
>
> (b) Actual prejudice to the petitioner.

---

[6]Pursuant to NRS 34.810(2), a petition filed pursuant to the former post-conviction procedure at NRS Chapter 177 is a prior petition. *Valerio v. State,* 112 Nev. 383, 387-88, 915 P.2d 874, 877 (1996).

Both statutes require a petitioner to demonstrate a valid basis exists to excuse the procedural bars.[7] Otherwise, the district court must dismiss the petition without an evidentiary hearing.[8]

### NRS 34.726 applies to successive petitions

NRS 34.726 was enacted in 1991 and applies to petitions filed on or after January 1, 1993.[9] Pellegrini filed his second petition on April 12, 1999—more than ten years after the issuance of remittitur on direct appeal and more than six years after NRS 34.726 became effective. Accordingly, without a showing of good cause for the delay and actual prejudice, Pellegrini's successive petition is barred under the terms of NRS 34.726(1). Pellegrini and amicus argue, however, that NRS 34.726 may not be applied to successive petitions because: (1) the legislative history shows an intent not to deprive petitioners of the right to file successive petitions at any time subject only to the laches bar at NRS 34.800 for delay in filing; (2) such application leads to absurd results and renders nugatory the procedural bars at NRS 34.800 and NRS 34.810; and (3) representatives of state government, including a former employee of this court, testified in support of the bill leading to enactment of the statute, assuring that such application would not occur, and therefore, in the case of a successive petition, equitable estoppel prevents the State from asserting the bar and prevents this court from recognizing it. Pellegrini also argues that applying NRS 34.726 to successive petitions would constitute an unconstitutional suspension of the writ. These contentions lack merit.

We have previously applied the time bar at NRS 34.726 to successive petitions in published and unpublished dispositions.[10]

---

[7]*See* NRS 34.726(1); NRS 34.810(3).

[8]*See* NRS 34.745(4) (providing for summary dismissal of successive petitions); NRS 34.770(1)-(2) (providing that where a judge determines upon review of the pleadings and supporting documents "that the petitioner is not entitled to relief and an evidentiary hearing is not required, he shall dismiss the petition without a hearing"); *Dickerson v. State,* 114 Nev. 1084, 1088, 967 P.2d 1132, 1134 (1998) (discussing dismissal for failure to allege sufficient basis to overcome time bar at NRS 34.726); *Bejarano v. Warden,* 112 Nev. 1466, 1471, 929 P.2d 922, 925-26 (1996) (discussing dismissal for failure to allege sufficient basis to overcome procedural bars at NRS 34.810).

[9]1991 Nev. Stat., ch. 44, §§ 5, 32-33, at 75-76, 92.

[10]For example, in *Bennett v. State,* 111 Nev. 1099, 1103, 901 P.2d 676, 679 (1995), we concluded that good cause excused the procedural bar at NRS 34.726(1) for untimely filing of a second petition where the first petition had been timely filed, but not pursued by counsel, and any delay in filing the second petition was not the petitioner's fault. In *Moran v. State,* Docket No. 28188 (Order Dismissing Appeal, March 21, 1996), we applied NRS 34.726

We now specifically hold that NRS 34.726 applies to successive petitions.

The right to seek the remedy of habeas corpus is protected by the Nevada Constitution.[11] Article 1, Section 5, states: "The privilege of the writ of Habeas Corpus, shall not be suspended unless when in cases of rebellion or invasion the public safety may require its suspension."[12] As late as 1967, however, no statutory framework existed to govern the procedure for obtaining post-conviction relief, though the constitutional right to petition for habeas corpus relief was recognized in Chapter 34 of the NRS.[13] That year, our Legislature enacted the Nevada Criminal Procedure Act ("1967 Act"), providing for procedures to obtain post-conviction relief,[14] which were ultimately codified at NRS Chapter 177 ("Chapter 177 remedy"). Because the drafters of the 1967 Act intended "to offer but one remedy" in post-conviction,[15] they designated the Chapter 177 remedy as "habeas corpus"[16] and made it the exclusive means of collaterally attacking the validity of a conviction or sentence.[17]

Unfortunately, the drafters of the 1967 Act overlooked the limits to the constitutional grant of jurisdiction over writs of habeas corpus. Article 6, Section 6, provided: "The District Courts, and the Judges thereof shall . . . have power to issue writs of Habeas Corpus on petition by, or on behalf of any person *held in actual custody in their respective districts.*"[18] The 1967 Act, however, vested jurisdiction over the Chapter 177 remedy in the district court "in which the conviction took place."[19] This oversight

---

and NRS 34.800 to bar claims raised in a successive petition. Our decision in *Moran* was later examined by the Ninth Circuit in *Moran v. McDaniel*, 80 F.3d 1261, 1268-70 (9th Cir. 1996), wherein that court determined that Nevada's statutory time bars are regularly applied.

[11]Nev. Const. art. 1, § 5; *see also* Nev. Const. art. 6, § 6. The Federal Constitution provides no right to post-conviction habeas review by state courts. *Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987).

[12]Nev. Const. art. 1, § 5.

[13]*See* 1967 Nev. Stat., ch. 523, §§ 429-30, at 1469.

[14]*See* 1967 Nev. Stat., ch. 523, §§ 317-24, at 1447-49.

[15]*See* Legislative Commission of the Legislative Counsel Bureau State of Nevada, 54th Sess., Revision of Nevada's Substantive Criminal Law and Procedure in Criminal Cases, Report of the Subcommittee for Revision of the Criminal Law to the Legislative Commission, at 3 (November 18, 1966).

[16]*Id.*

[17]*See* 1967 Nev. Stat., ch. 523, §§ 317, 429, at 1447, 1469.

[18]Nev. Const. art. 6, § 6 (1967) (emphasis added); *see also* 1991 Nev. Stat., at 2494.

[19]*See* 1967 Nev. Stat., ch. 523, §§ 318, 322, at 1447-48, 1449.

proved to be fatal to the intent of offering a single post-conviction remedy.

In *Marshall v. Warden,*[20] this court addressed the constitutionality of the 1967 Act in light of the jurisdictional limits on the power of the district courts to grant habeas relief. We held that the Act's attempt to make the Chapter 177 remedy the exclusive means of pursuing post-conviction habeas relief was unconstitutional.[21] Still, this language in the Act was severable; therefore, we concluded that the Chapter 177 remedy could be given effect as a post-conviction remedy alternative to the constitutional writ of habeas corpus.[22]

In 1969, the Legislature amended NRS Chapters 34 and 177 to delete the provisions making the Chapter 177 procedure the exclusive means of obtaining post-conviction relief.[23] Reference in Chapter 177 to its remedy as "habeas corpus" was deleted and replaced by reference to "post-conviction relief."[24]

In subsequent sessions, the Legislature incrementally amended Chapters 34 and 177 to curtail the ability to alternatively use the two remedies and to limit the filing of successive or delayed applications for post-conviction or habeas relief. For instance, aside from the exclusive remedy provision severed as a result of *Marshall,* the only procedural bar contained in either chapter in 1967 was the provision eventually codified at NRS 177.375 for dismissal based on waiver of claims not raised in a first petition or already adjudicated in or "knowingly and understandingly waived" in a prior proceeding.[25] In 1973, NRS 177.375 was amended to delete the reference to a knowing and voluntary waiver, replace the "reasonable cause" standard with a "good cause" standard, and make more specific the grounds for waiver.[26] Chapter 177 was further amended to provide the first statutory time bar to filing of post-conviction petitions. A new subsection was added to state that, absent "good cause shown for delay," an application for post-conviction relief under Chapter 177 must be "filed within 1 year following entry of judgment of conviction or, if an appeal has been taken from such judgment, within 1 year from the final decision upon or pursuant to the appeal."[27] The 1973 amendments also provided that the Chapter

[20]83 Nev. 442, 434 P.2d 437 (1967).

[21]*Id.* at 445-46, 434 P.2d at 439-40.

[22]*Id.* at 444-46, 434 P.2d at 439-40.

[23]1969 Nev. Stat., ch. 87, §§ 1, 3, at 106-07.

[24]*Id.* § 3, at 107.

[25]1967 Nev. Stat., ch. 523, § 323, at 1449.

[26]1973 Nev. Stat., ch. 349, § 7, at 438-39.

[27]*Id.* § 1, at 436.

177 remedy was not available "if a writ of habeas corpus is used to attack a conviction or sentence."[28] The grounds for relief in a Chapter 177 proceeding were narrowed to encompass only constitutional violations.[29] In 1985, Chapter 34 was amended to include provisions for dismissal based on laches (later codified at NRS 34.800)[30] and provisions for dismissal based on waiver or abusive filing of successive petitions (later codified at NRS 34.810).[31] In 1987, the Legislature amended Chapter 34 to state:

> A petitioner may not file a petition for a writ of habeas corpus unless he previously filed a petition for post-conviction relief pursuant to [Chapter 177], or demonstrates good cause for the failure to file a petition for post-conviction relief or meet the time requirements for filing a petition for post-conviction relief and actual prejudice to the petitioner.[32]

This amendment eliminated the availability of habeas corpus as an "alternative" remedy, as we had earlier recognized it in *Marshall*.[33] NRS 177.375 was also amended to require a showing of actual prejudice to the petitioner in addition to good cause to excuse the procedural bars for waiver and successive petitions.[34] In 1989, NRS 34.810 was amended to add subsection 3, requiring petitioners to carry the burden of pleading and proving specific facts to demonstrate good cause to overcome the waiver and successive petition bars.[35]

The movement toward abolishing the dual remedy system finally culminated in the 1989 passage of Senate Joint Resolution ("SJR") 13, which proposed to amend the Nevada Constitution to extend the jurisdiction to issue writs of habeas corpus to dis-

---

[28]*Id.* This limitation was ultimately made unnecessary by subsequent amendments to NRS Chapter 34 and was ultimately deleted in 1987. *See* 1987 Nev. Stat., ch. 539, § 39, at 1229.

[29]*See* 1973 Nev. Stat., ch. 349, §§ 1, 8, at 436, 439.

[30]*See* 1985 Nev. Stat., ch. 435, § 9, at 1231-32. Prior to this amendment, this court had already recognized similar restrictions on the ability to file delayed habeas petitions. *See Groesbeck v. Warden,* 100 Nev. 259, 679 P.2d 1268 (1984).

[31]*See* 1985 Nev. Stat., ch. 435, § 10, at 1232.

[32]1987 Nev. Stat., ch. 539, § 3, at 1209. This amendment, which was codified at NRS 34.725, remained in effect until the abolishment of the Chapter 177 remedy, which became effective in January 1993. *See* 1991 Nev. Stat., ch. 44, §§ 31-33, at 92.

[33]*Passanisi v. Director, Dep't Prisons,* 105 Nev. 63, 67, 769 P.2d 72, 74-75 (1989).

[34]1987 Nev. Stat., ch. 539, § 45, at 1231-32.

[35]1989 Nev. Stat., ch. 204, § 5, at 457.

trict courts wherein petitioners suffered their criminal convictions.[36] The proposal was intended to set the stage for the Legislature to increase efficiency by consolidating the dual post-conviction remedies while retaining the jurisdictional reach of Chapter 177 to courts of conviction. The latter was necessary to ease the burden on courts in districts where most prisoners are incarcerated and allow the courts already familiar with the case to rule on a petitioner's claims challenging his conviction and sentence.[37]

In anticipation of the approval and passage of SJR 13, this court appointed a committee to study the impact of the constitutional amendment and to propose and draft statutes necessary to adopt a single post-conviction remedy.[38] The committee's efforts resulted in Assembly Bill ("AB") 227, which proposed to amend Chapter 34 and repeal the post-conviction provisions in Chapter 177. The time bar provisions at NRS 34.726 were part of the AB 227 amendments to Chapter 34.[39] AB 227 was approved and enacted in 1991 and became effective on January 1, 1993, after SJR 13 was passed by the 1991 Legislature[40] and ratified by the people at the 1992 general election.[41] The provisions of AB 227 did not apply to any post-conviction proceeding commenced before January 1, 1993.[42]

Pellegrini, with support from amicus, argues that the legislative history of the post-conviction habeas remedy reveals an intent to exempt successive petitions from the one-year time limit of NRS 34.726. Pellegrini argues that applying the time limit to successive petitions would create absurd results as this would effectively time bar all successive petitions, which, he argues, cannot possibly be filed within the time limit, and this result would render nugatory NRS 34.800 and NRS 34.810, which both contemplate the possibility of successive petitions.

However, words in a statute will generally be given their plain meaning, unless such a reading violates the spirit of the act, and when a statute is clear on its face, courts may not go beyond the

---

[36]1989 Nev. Stat., at 2269-70.

[37]*See* Minutes of Senate Comm. on Judiciary, 65th Leg., at 6-10 (Nev., March 30, 1989); *see also* Minutes of the Senate Comm. on Judiciary, 66th Leg., at 4-7 (Nev., January 29, 1991).

[38]ADKT 121 (Order Appointing Study Committee, June 23, 1989).

[39]*See* 1991 Nev. Stat., ch. 44, § 5, at 75.

[40]1991 Nev. Stat., at 2494.

[41]1991 Nev. Stat., ch. 44, § 33, at 92.

[42]*Id.* § 32, at 92.

statute's language to consider legislative intent.[43] Thus, we are not at liberty to " 'go fishing in . . . the legislative mind' " where a statute is clear and unambiguous.[44] Further, when reviewing a legislative change in a statute, " '[w]e are bound to presume that it was done ex industria, for the purpose of effecting the change which is effected in the law.' "[45] Still, we must construe statutory language to avoid absurd or unreasonable results, and, if possible, we will avoid any interpretation that renders nugatory part of a statute.[46]

NRS 34.726 provides no exception for successive petitions, and we conclude that the plain language of the statute indicates that it applies to all petitions filed after its effective date of January 1, 1993. We add one caveat, albeit unhelpful to Pellegrini's cause, based on the rule that "[t]he legislature cannot extinguish an existing cause of action by enacting a new limitation period without first providing a reasonable time after the effective date of the new limitation period in which to initiate the action."[47] Prior to the effective date of the statute, the sole statutory considerations for timely filing under Chapter 34 were laches, pursuant to NRS 34.800, and the prerequisite at former NRS 34.725 that a prior post-conviction petition pursuant to NRS Chapter 177 had to be timely filed. If a petitioner was not barred by laches and had met the prior petition prerequisite, his Chapter 34 petition was not subject to dismissal on grounds of failing to meet a one-year filing rule. Because the enactment of NRS 34.726 created a new limit for filing a successive petition pursuant to Chapter 34, petitioners whose convictions were final before the effective date of NRS 34.726 and who had filed a timely first petition under Chapter 177 were entitled to a reasonable period of time after the effective date of the new limitation period in which to file any successive petitions. The State concedes, and we agree, that for purposes of determining the timeliness of these successive petitions pursuant to NRS 34.726, assuming the laches bar does not apply, it is both reasonable and fair to allow petitioners one year

---

[43]Speer v. State, 116 Nev. 677, 679, 5 P.3d 1063, 1064 (2000); Carson City District Attorney v. Ryder, 116 Nev. 502, 505, 998 P.2d 1186, 1188 (2000).

[44]Ex Parte Smith, 33 Nev. 466, 479-80, 111 P. 930, 935 (1910) (quoting V. & T.R.R. Co. v. Lyon County, 6 Nev. 68, 73 (1870)).

[45]Camino Et Al. v. Lewis, 52 Nev. 202, 210, 284 P. 766, 768 (1930) (Coleman, J., concurring) (quoting Crane & Co. v. Gloster, 13 Nev. 279, 281 (1878)).

[46]Speer, 116 Nev. at 679, 5 P.3d at 1064.

[47]Brown v. Angelone, 150 F.3d 370, 373 (4th Cir. 1998) (citing Block v. North Dakota, 461 U.S. 273, 286 n.23 (1983)).

from the effective date of the amendment to file any successive habeas petitions.[48] However, any such successive filing would remain subject to other procedural bars applicable to successive petitions. Pellegrini did not file his petition until 1999 and, therefore, could not have qualified for timely filing under this narrow exemption from the requirements of NRS 34.726.

Moreover, we conclude that application of the time bar to successive petitions does not violate the spirit of AB 227 or lead to absurd results. We have already recognized that the statutory time limit at NRS 34.726(1), like the former one-year time limit at NRS 177.315, evinces intolerance toward perpetual filing of petitions for relief,[49] which clogs the court system and undermines the finality of convictions.[50] A plain reading of AB 227 shows its overall spirit was one of limiting habeas petitioners to one time through the system absent extraordinary circumstances.

Furthermore, the application of NRS 34.726 to successive petitions does not render nugatory the laches provision of NRS 34.800 or the waiver and successive petition provisions of NRS 34.810. For example, it is conceivable that a petitioner could demonstrate good cause for failure to comply with the one-year time limit and actual prejudice, but laches would nevertheless bar the claim because of prejudice to the State and failure to demonstrate a fundamental miscarriage of justice.[51] Additionally, despite Pellegrini's argument, it is possible for a petitioner to file more than one petition within the one year allotted under NRS 34.726. The waiver and successive petition bars at NRS 34.810 deal with the potential for such piecemeal application, and therefore, that statute is not rendered nugatory. Actually, it is Pellegrini's interpretation of NRS 34.726 that could create absurd results. Under Pellegrini's interpretation, a petitioner could file an untimely first petition, and after its proper dismissal, assuming the claims were not waived on direct appeal or barred by law of the case, would

---

[48]*Cf. id.* at 375 (adopting similar construction of one-year filing limitation for habeas petitions under the federal Antiterrorism and Effective Death Penalty Act).

[49]*See Dickerson,* 114 Nev. at 1087-88, 967 P.2d at 1134; *see also Colley v. State,* 105 Nev. 235, 236, 773 P.2d 1229, 1230 (1989) (discussing NRS 177.315).

[50]*See Lozada v. State,* 110 Nev. 349, 358, 871 P.2d 944, 950 (1994).

[51]*See* NRS 34.800(1)(b) (providing for dismissal where the delay in filing "[p]rejudices the State of Nevada in its ability to conduct a retrial of the petitioner, unless the petitioner demonstrates that a fundamental miscarriage of justice has occurred in the proceedings resulting in the judgment of conviction or sentence").

be permitted to raise the same claims in a successive petition, subject only to laches. This is possible because, absent good cause and actual prejudice, NRS 34.810(2) bars successive petitions raising claims that were raised and determined on the merits in a prior petition—it does not address claims that were raised in a prior petition but were not determined on the merits. Allowing for such abusive application for relief would be irrational. In sum, the plain language of the one-year provision requires its application to all petitions; this reading is consistent with the spirit of AB 227, is not absurd, and does not render nugatory other habeas procedural bars. Accordingly, we do not look beyond the statutory scheme itself to interpret NRS 34.726.

Nonetheless, even were we to consider the relevant legislative history, it does not support Pellegrini's arguments. Nowhere in the legislative history is the intended effect of NRS 34.726 on successive petitions expressly addressed. Moreover, the legislative history of the habeas statutes shows that Nevada's lawmakers never intended for petitioners to have multiple opportunities to obtain post-conviction relief absent extraordinary circumstances. From our *Marshall* decision, which identified the constitutional flaw in the Legislature's initial effort to create only one remedy in habeas, and through the eventual elimination of the Chapter 177 remedy, the Legislature made every effort to limit the ability to bring repetitive, meritless and delayed petitions. By the time Chapter 177's post-conviction relief provisions were repealed, we had already interpreted its one-year time limit at NRS 177.315 to apply to successive Chapter 177 petitions.[52] The statutory scheme permitted petitioners to resort to a Chapter 34 petition only in exceptional circumstances, where the prerequisite of a prior timely Chapter 177 petition was met or excused and where petitioners could overcome the statutory laches, waiver, and successive petition bars. Still, it is clear that these limitations had proven inefficient, and therefore AB 227, along with its procedural bars, was intended to ensure that petitioners would be limited to one time through the post-conviction system. The first argument made in voters' sample ballots in 1992 in favor of the constitutional amendment proposed by SJR 13 evidences this ''one time through the system'' intent:

> Under the existing system, a prisoner has two chances at habeas corpus relief, one in the court of his conviction and one in the court in the district in which he is incarcerated. This amendment would allow the Legislature to specify *only one comprehensive process,* giving more finality to criminal

---

[52]*See Deutscher v. Warden,* 102 Nev. 388, 724 P.2d 213 (1986).

convictions. By reducing costly paperwork, the amendment would also result in significant savings to the state.[53]

Additionally, the bill sponsor's testimony made clear that the effect of repealing the Chapter 177 remedy would be that "only one course of action would exist for a prisoner to challenge the constitutionality of his/her conviction or sentence."[54]

Pellegrini and amicus also argue that the doctrine of equitable estoppel prevents the State from asserting and the courts from applying NRS 34.726 in cases of successive petitions. They cite to testimony before the legislative committees considering AB 227. A representative of the Attorney General's Office testified in support of AB 227 that he "assessed the bill as doing nothing more than transferring jurisdiction where it should be."[55] This court's employee, who was chairman of the study committee involved in drafting the proposed bill, also testified that under AB 227 "[n]o access to the courts would be cut off, but rather the process was being simplified by eliminating a redundant procedure,"[56] and that petitioners "would lose no procedural safeguards currently afforded [them] under Chapter 177."[57] He testified that AB 227 "remove[d] process for the sake of process, but [did] nothing to preclude complete review of a conviction."[58] Pellegrini and amicus characterize these statements as representations, binding upon the State and this court, that NRS 34.726 would not be applied to successive petitions. We reject their contentions.

Pellegrini and amicus cite no authority that would support application of equitable estoppel to disregard a statute which is clear on its face. Further, we conclude that the doctrine may not be invoked under the circumstances presented here. "[E]quitable estoppel operates to prevent the assertion of legal rights that in equity and good conscience should be unavailable because of a party's conduct."[59] It requires justifiable reliance by the party

---

[53]1992 General Election Sample Ballot, Arguments for Passage of Ballot Question No. 2, at 15 (emphasis added).

[54]Minutes of the Senate Comm. on Judiciary, 66th Leg., at 3 (Nev., March 20, 1991) (testimony of Assemblywoman Dawn Gibbons).

[55]*Id.* (testimony of Chief Deputy David Sarnowski).

[56]Minutes of the Assembly Comm. on Judiciary, 66th Leg., at 5 (Nev., February 6, 1991) (testimony of Staff Counsel John Hawley).

[57]Minutes of Senate Comm. on Judiciary, 66th Leg., at 3 (Nev., March 20, 1991) (testimony of John Hawley).

[58]*Id.*

[59]*United Brotherhood v. Dahnke,* 102 Nev. 20, 22, 714 P.2d 177, 178-79 (1986).

invoking the doctrine.[60] We have recognized that the doctrine generally may not be invoked against the government or its agencies[61] and that equitable principles will not justify a court's disregard of statutory requirements.[62] "[T]he fact that the writ has been called an 'equitable' remedy does not authorize a court to ignore . . . statutes, rules, and precedents."[63] Here, Pellegrini cannot demonstrate any justifiable reliance on the testimony in question. We conclude that the testimony did not constitute representations that successive petitions were exempt from the time limit later codified at NRS 34.726, and cannot reasonably be construed to have misled either the Legislature or Pellegrini in this respect. As we have noted, a full review of the legislative history makes it abundantly clear that the Legislature understood AB 227 would leave petitioners only one opportunity to obtain post-conviction relief absent a demonstration of good cause and actual prejudice. Further, Pellegrini neither alleges nor demonstrates that he relied on the testimony at issue. He failed to file his petition until over ten years after issuance of the remittitur on direct appeal and well beyond the presumptive period of prejudice under the laches bar at NRS 34.800.[64] Accordingly, the doctrine of equitable estoppel provides no basis for relief here.

Finally, Pellegrini argues that NRS 34.726, as it applies to successive petitions, is an unconstitutional suspension of habeas corpus. We disagree and conclude that the Legislature's enactment of the statutory one-year time limit as applicable to successive petitions is a reasonable regulation of the right to pursue habeas corpus relief, especially in light of the provisions for excusing the bar in instances of cause and actual prejudice. Therefore, the Legislature had the power to enact the statute, and we find no constitutional infirmity in it.[65]

Based on the foregoing, we conclude that under NRS 34.726, all of Pellegrini's claims are barred absent a demonstration of good cause and actual prejudice.

---

[60]*Merrill v. DeMott,* 113 Nev. 1390, 1396, 951 P.2d 1040, 1043 (1997).

[61]*See Foley v. Kennedy,* 110 Nev. 1295, 1302, 885 P.2d 583, 587 (1994); *State v. Bunkowski,* 88 Nev. 623, 634, 503 P.2d 1231, 1238 (1972).

[62]*See Mello v. Woodhouse,* 110 Nev. 366, 373, 872 P.2d 337, 341 (1994).

[63]*Lonchar v. Thomas,* 517 U.S. 314, 323 (1996) (citation omitted).

[64]*See* NRS 34.800(2) ("A period exceeding 5 years between the filing of . . . a decision on direct appeal of a judgment of conviction and the filing of a petition challenging the validity of a judgment of conviction creates a rebuttable presumption of prejudice to the state.").

[65]*See Passanisi,* 105 Nev. at 66, 769 P.2d at 74 ("The legislature may . . . impose a reasonable regulation on the writ of habeas corpus, so long as the traditional efficacy of the writ is not impaired.").

*Claims also barred under NRS 34.810*

Pellegrini's claims numbered 4, 5, 9, and 10 and a variation of claim numbered 6 were raised and rejected on direct appeal. Variations of claims numbered 1, 3, 6, 9, 10, 12, 16, 17 and 19 were raised in Pellegrini's first-post conviction petition and rejected by the district court in its denial of the petition, which we upheld on appeal. Our determinations on appeal are the law of the case.[66] To the extent that the district court determined the merits of these claims in denying the first petition, these claims are also barred under the successive petition provisions of NRS 34.810(2) absent a showing of good cause and actual prejudice. To the extent that any of the above claims were not fully raised in the prior proceedings, these claims as well as claims numbered 2, 7, 8, 11, 13, 14, 15, 20, 21 and 22 are new claims which could have been raised either at trial, on direct appeal or in the prior petition.[67] Lacking a demonstration of good cause and actual prejudice, these claims are procedurally barred under the waiver provisions of NRS 34.810(1)(b) or as an abuse of the writ pursuant to NRS 34.810(2).

Pellegrini does not dispute this. However, he argues that this court applies procedural bars inconsistently in cases involving successive petitions, and, therefore, the application of NRS 34.810 here violates his rights to equal protection and due process of law. His contentions lack merit.

We emphasize that we are not asked to consider any issue of stare decisis—Pellegrini cites no prior decision of this court holding that the bars at NRS 34.810 do not apply under circumstances similar to those presented here. Further, he cites no authority holding that a court in conducting habeas review may ignore valid statutory procedural rules on the basis that these may have been inconsistently applied in the past. Pellegrini relies on authority stating a rule of federal habeas review which provides that federal courts are normally prohibited from reviewing constitutional claims where a state court has explicitly invoked a state procedural bar as a separate basis for decision.[68] Under this rule, a state court's decision that a habeas claim is procedurally barred under

---

[66]*See Hall v. State,* 91 Nev. 314, 315, 535 P.2d 797, 798 (1975).

[67]The sole claim that was not and could not have been raised in earlier proceedings is the claim numbered 18—a claim that post-conviction counsel was ineffective for failing to raise in the first petition claims numbered 1-3, 6-8, 11-17 and 19-22. Nevertheless, this claim, like Pellegrini's other claims, is time barred.

[68]*See, e.g., McKenna v. McDaniel,* 65 F.3d 1483, 1488 (9th Cir. 1995).

state law is not adequate to bar federal review unless the procedural bar is applied regularly in the vast majority of cases[69] and its application is not discretionary.[70] However, this rule has no legitimate application to our review in habeas,[71] and we have rejected the assertion that this court inconsistently applies the procedural default rules under NRS 34.810.[72]

Even so, we take this opportunity to clarify the law regarding Nevada's procedural rules because this is an argument arising with greater frequency, the United States Court of Appeals for the Ninth Circuit has in two opinions rejected the adequacy of our procedural bars for waiver, and we are concerned with the proper interpretation of Nevada's procedural bars. First, we note that the Ninth Circuit Court of Appeals has recognized as adequate to prohibit federal habeas review Nevada's statutory procedural bars both for claims that are untimely[73] and for claims in noncapital cases that were waived by the failure to raise them in a first petition or by the failure to appeal from the denial of that petition.[74] Conversely, in its decisions in *McKenna v. McDaniel*[75] and *Petrocelli v. Angelone,*[76] the Ninth Circuit court concluded that our procedural bars for waiver are discretionary in capital cases and thus inadequate to prohibit federal review of the merits of waived claims.

In *McKenna,* a capital case, the Ninth Circuit court held that federal review of the merits of a claim was not barred by this court's decision affirming, on the ground of waiver, the lower court's denial of a post-conviction claim of trial court error which was not raised on direct appeal.[77] The Ninth Circuit court stated:

> [I]t would appear at first blush as if the Nevada Supreme Court made a plain statement that McKenna's challenge to the depravity of mind instruction was procedurally waived because he failed to raise the issue on direct appeal. After noting the possibility of procedural default, however, the court went on to specifically reach the merits of the federal

---

[69]*Moran,* 80 F.3d at 1270 (citing *Dugger v. Adams,* 489 U.S. 401, 411 n.6 (1989)).

[70]*See Williams v. Georgia,* 349 U.S. 375, 383 (1955).

[71]*See Valerio,* 112 Nev. at 389, 915 P.2d at 878; *Kills on Top v. State,* 901 P.2d 1368, 1386 (Mont. 1995).

[72]*See Valerio,* 112 Nev. at 389-90, 915 P.2d at 878.

[73]*See Loveland v. Hatcher,* 231 F.3d 640, 642-43 (9th Cir. 2000); *Moran,* 80 F.3d at 1269-70.

[74]*See Bargas v. Burns,* 179 F.3d 1207, 1211-13 (9th Cir. 1999).

[75]65 F.3d at 1488-89.

[76]248 F.3d 877 (9th Cir. 2001).

[77]65 F.3d at 1488-89.

claim. This analysis was necessary to the court's holding because in Nevada failure to raise constitutional claims on direct appeal does not necessarily bar consideration of those claims on collateral review. *See Pertgen v. Nevada,* 110 Nev. 554, 875 P.2d 361, 364 (1994). . . . Thus, the court's refusal to entertain McKenna's complaints on collateral review, at best, represents a refusal to exercise discretion to hear the claim. This is insufficient for the State to invoke the procedural bar doctrine.[78]

The Ninth Circuit court later followed *McKenna* in *Petrocelli,* where it held that, in the context of capital cases, Nevada's procedural bar for waiver is discretionary and inadequate to prohibit federal court review of the merits of waived claims.[79] In concluding that Nevada courts have discretion in applying procedural bars to constitutional claims in capital habeas cases, the *Petrocelli* court relied on this court's decisions in *Jones v. State,*[80] *Hill v. State,*[81] *Paine v. State,*[82] *Pertgen v. State,*[83] and *Flanagan v. State.*[84] The court also relied on *Warden v. Lischko*[85] to support the general conclusion that the application of Nevada's procedural bars for waiver is discretionary.[86]

We take this opportunity to clarify our prior case law relied on by the Ninth Circuit court in *McKenna* and *Petrocelli.* First, we acknowledge that our analysis in *Pertgen,* though much of it dictum, was unfortunately flawed. There, we stated:

Under certain circumstances, a valid claim of ineffective assistance of appellate counsel may establish good cause such that we may review apparently meritorious issues that should

---

[78]*Id.* at 1488-89.

[79]248 F.3d at 885-88. We note that in *Petrocelli, id.* at 886, the Ninth Circuit court mischaracterized our decision in *McKenna v. State,* where we determined that a claim that an aggravating circumstance was unconstitutional was procedurally barred on the ground of waiver. Contrary to *Petrocelli's* indication, this claim was not raised in McKenna's state post-conviction petition as support for a claim of ineffective counsel; it was an independent claim that should have been raised on direct appeal. *See McKenna v. State,* Docket No. 19026 (Order Dismissing Appeal at 3, January 18, 1990); *see also McKenna,* 65 F.3d at 1488.

[80]101 Nev. 573, 707 P.2d 1128 (1985).

[81]114 Nev. 169, 953 P.2d 1077 (1998).

[82]110 Nev. 609, 877 P.2d 1025 (1994).

[83]110 Nev. 554, 875 P.2d 361 (1994).

[84]104 Nev. 105, 754 P.2d 836 (1988).

[85]90 Nev. 221, 523 P.2d 6 (1974).

[86]*Petrocelli,* 248 F.3d at 888.

have been raised on direct appeal. Under the unique circumstances of this case, we consider appellant's allegations to be sufficient to overcome this significant procedural hurdle. Moreover, the power of this court to address plain error or issues of constitutional dimension *sua sponte* is well established. Emmons v. State, 107 Nev. 53, 60-61, 807 P.2d 718, 723 (1991); *see also* Edwards v. State, 107 Nev. 150, 153 n.4, 808 P.2d 528, 530 n.4 (1991) (where appellant presents an adequate record for reviewing serious constitutional issues, this court will address such claims on the merits). Because this case involves the ultimate punishment and because appellant's claims of ineffective assistance of counsel are directly related to the merits of his claims, we will consider appellant's claims on the merits in order to determine whether appellant received ineffective assistance of counsel.[87]

This language confuses the waiver analysis as it applies to claims of ineffective assistance of counsel. *Pertgen* incorrectly indicated that procedural bars for waiver are applicable to claims of ineffective assistance of counsel initially brought in a first post-conviction proceeding. Ineffective assistance of counsel claims are properly raised for the first time in a timely first post-conviction petition; thus, the cause and prejudice analysis is not necessary in determining whether these claims are appropriately considered on the merits.

This was not always the rule. Before the 1980s, this court was generally willing to review claims of ineffective assistance of counsel on direct appeal,[88] and recognized that such claims could be waived by the failure to raise them on direct appeal.[89] As early as 1975, however, we had begun to recognize that such claims, if without support by the record, were not appropriate for consideration on direct review.[90] In 1981, we decided *Gibbons v. State*,[91] where we declined to consider a claim of ineffective assistance of counsel on direct appeal because it was unclear whether counsel in that case had any basis for his actions which, from the record, were seemingly ineffective. We declared that "the more appropriate vehicle for presenting a claim of ineffective assistance of counsel is through post-conviction relief."[92]

---

[87]*Pertgen*, 110 Nev. at 560, 875 P.2d at 364.

[88]*See, e.g., Donovan v. State,* 94 Nev. 671, 674-75, 584 P.2d 708, 711 (1978).

[89]*See Lischko,* 90 Nev. at 222-23 & n.1, 523 P.2d at 7 & n.1.

[90]*See Brackenbrough v. State,* 91 Nev. 487, 537 P.2d 1194 (1975).

[91]97 Nev. 520, 522-23, 634 P.2d 1214, 1216 (1981).

[92]*Id.* at 523, 634 P.2d at 1216.

In step with our decisions limiting the availability of review on direct appeal of most claims of ineffective assistance of counsel, we also held that such claims, if properly brought for the first time in a post-conviction petition, would not be subject to the post-conviction procedural bar for waiver.[93] But this left open the question of whether such claims were waived if they would have been appropriate for resolution on direct appeal without an evidentiary hearing. Ultimately, we adopted a bright-line rule in *Daniels v. State*[94] and held that, "[b]ecause of the usual need for an evidentiary hearing to resolve a claim of ineffective counsel, the failure to raise the claim on direct appeal does not constitute a waiver of the claim for purposes of post-conviction proceedings."

Following these determinations, we have generally declined to address claims of ineffective assistance of counsel on direct appeal unless there has already been an evidentiary hearing[95] or where an evidentiary hearing would be unnecessary.[96] In reviewing our prior decisions, we are mindful that we have not always acknowledged the exceptions to the rule barring review of such claims on direct appeal. For example, we have stated, without qualification, that "this court has consistently concluded that it will not entertain claims of ineffective assistance of counsel on direct appeal."[97] Therefore, fairness to habeas petitioners requires a bright-line rule regarding the waiver of these claims. Accordingly, we reaffirm our previous holding in *Daniels* and specifically hold that claims of ineffective assistance of counsel brought in a timely first post-conviction petition for a writ of habeas corpus are not subject to dismissal on grounds of waiver, regardless of whether the claims could have been appropriately raised on direct appeal. That being stated, *Pertgen* does not stand for a relaxation of the procedural bars for waiver—the issue of ineffective assistance of counsel was appropriately raised in the post-conviction proceeding under review. The procedural bar was not applicable to the claim. *Pertgen* failed to make a crucial distinction: trial court error may

[93]*Bolden v. State,* 99 Nev. 181, 183, 659 P.2d 886, 887 (1983).

[94]100 Nev. 579, 580, 688 P.2d 315, 316 (1984), *overruled on other grounds by Varwig v. State,* 104 Nev. 40, 752 P.2d 760 (1988). The Legislature subsequently amended the waiver provisions at NRS 177.375 applicable to guilty pleas to reflect that such claims were properly brought in a post-conviction petition. *See* 1987 Nev. Stat., ch. 539, § 45, at 1231-32.

[95]*See, e.g., Feazell v. State,* 111 Nev. 1446, 1449, 906 P.2d 727, 729 (1995).

[96]*See, e.g., Mazzan v. State,* 100 Nev. 74, 80, 675 P.2d 409, 413 (1984).

[97]*Corbin v. State,* 111 Nev. 378, 381, 892 P.2d 580, 582 (1995).

be appropriately raised in a timely first post-conviction petition in the context of claims of ineffective assistance of counsel, but independent claims based on the same error are subject to the waiver bars because such claims could have been presented to the trial court or raised in a direct appeal.[98]

We also view as problematic and disapprove of *Pertgen*'s other implication that special discretion attaches to procedural bars applied in capital habeas cases. The Ninth Circuit court in *Petrocelli* also relied on *Jones* and *Flanagan* as support for the conclusion that this court relaxes its procedural bars in capital habeas review. Our decisions in the latter two cases resolved direct appeals from judgments of conviction. On direct appeal of any judgment of conviction, this court has discretion to review instances of plain error despite the failure to preserve an issue at trial or the failure to raise the issue on appeal.[99] We have acknowledged the special import attached to this discretion where the death penalty has been imposed.[100] However, this plain error rule is a rule for review on direct appeal and does not create a procedural bar exception in any habeas proceeding, capital or not.

As noted by the Ninth Circuit court in *Petrocelli*,[101] in *Paine,* a direct appeal from a death sentence, we elected to address issues that we had previously determined in a prior appeal wherein we remanded the case for a new penalty hearing.[102] We briefly discussed these issues in *Paine,* stating that we did so "without attenuating the force and applicability of the law of the case."[103] Our decision was proper, as the law of the case doctrine states that " '[t]he law of a first appeal is the law of the case on all subsequent appeals in which the facts are substantially the same.' "[104] Paine argued that new evidence was adduced at his second penalty hearing.[105] Thus, it was appropriate for this court in applying the

---

[98]*See* NRS 34.810(1)(b).

[99]*See* NRS 178.602 ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."); *see, e.g., Collman v. State,* 116 Nev. 687, 711-12, 7 P.3d 426, 441-42 (2000), *cert. denied,* 121 S. Ct. 1617 (2001); *Geary v. State,* 112 Nev. 1434, 1440, 930 P.2d 719, 723 (1996), *clarified on other grounds on rehearing,* 114 Nev. 100, 952 P.2d 431 (1998).

[100]*See, e.g., Geary,* 112 Nev. at 1440, 930 P.2d at 723.

[101]*See Petrocelli,* 248 F.3d at 888.

[102]*Paine,* 110 Nev. at 615-16, 877 P.2d 1028-29.

[103]*Id.* at 615, 877 P.2d at 1029.

[104]*Hall,* 91 Nev. at 315, 535 P.2d at 798 (quoting *Walker v. State,* 85 Nev. 337, 343, 455 P.2d 34, 38 (1969)).

[105]*Paine,* 110 Nev. at 615, 877 P.2d at 1028.

law of the case doctrine to address whether the facts were substantially the same in both appeals. We also addressed Paine's argument that in the previous appeal we erroneously interpreted the law with respect to an aggravating circumstance.[106] However, it cannot be seriously disputed that a court of last resort has limited discretion to revisit the wisdom of its legal conclusions when it determines that further discussion is warranted.[107] We reject the suggestion that the rare exercise of that discretion must result in a determination that the law of the case doctrine is inadequate to bar reassertion of a claim in habeas.[108]

The Ninth Circuit court's reliance on *Hill v. State*[109] also warrants discussion. This was an appeal from an order dismissing a "second" post-conviction petition in a death penalty case, wherein we reached the merits of claims of ineffective assistance of trial and appellate counsel without mention of the waiver and successive petition bars. This case involved unique circumstances that were not fully set forth in our opinion. Hill had filed a first petition for post-conviction relief in proper person, which was summarily dismissed by the district court. At the time the relevant statutes required appointment of counsel in cases of indigence.[110] Hill filed a late notice of appeal from that dismissal, and we determined that we lacked jurisdiction to entertain the appeal.[111] However, we noted that dismissal of the appeal with prejudice would be inappropriate, and we dismissed the appeal without prejudice to Hill's right to refile the petition. Further, in the event that Hill elected to re-file his petition, we instructed the district court to appoint counsel for Hill and to conduct an evidentiary hearing.[112] Our opinion dismissing the appeal from the order denying the second petition does not mention the procedural bars; however, this is because the district court had recognized that pursuant to our order dismissing the earlier appeal, the second petition was a properly refiled or renewed first petition. Therefore, the procedural bars were not raised on appeal from the denial of the second petition, and we did not discuss them.

Finally, the Ninth Circuit court also relied on *Warden v. Lischko*[113] for the proposition that this court generally has discre-

[106]*Id.*

[107]*See Arizona v. California,* 460 U.S. 605, 618 n.8 (1983).

[108]*See Adams,* 489 U.S. at 411-12 n.6 (recognizing that to be adequate, a procedural bar need only be applied on the vast majority of cases).

[109]114 Nev. 169, 953 P.2d 1077 (1998).

[110]*See* 1987 Nev. Stat., ch. 539, § 42, at 1230-31.

[111]*Hill v. State,* Docket No. 18253 (Order Dismissing Appeal, June 29, 1987).

[112]*Id.*

[113]90 Nev. 221, 523 P.2d 6.

tion to overlook procedural bars. There, in reviewing an appeal from an order granting a post-conviction petition under NRS Chapter 177, we stated:

> Although the district court properly may have refused to entertain Lischko's post-conviction petition because of his failure to urge the incompetency of trial counsel as a claim of error upon direct appeal, it chose instead to conduct an evidentiary hearing and rule upon the merits. That choice fell within its discretionary power.[114]

Lischko's petition was filed in July of 1972.[115] As we have explained, at that time the statutory procedural bar for waiver was far less stringent than the current statutory bar at NRS 34.810. Moreover, *Lischko* was decided during the transitional period before this court had formulated its current rules for when claims of ineffective assistance of counsel must be brought. To the extent that *Lischko* supports the discretionary application of the current procedural bar for waiver, we hereby overrule it. The current statutory language is mandatory.[116]

In sum, we conclude that we have been consistent in requiring good cause and actual prejudice to overcome the statutory procedural bars. We perceive no basis to ignore the procedural bars here. Thus, NRS 34.810 requires Pellegrini to demonstrate good cause and actual prejudice.

*Good cause, actual prejudice and fundamental miscarriage of justice*

To overcome the procedural bars of NRS 34.726 and NRS 34.810, Pellegrini had the burden of demonstrating good cause for delay in bringing his new claims or for presenting the same claims again and actual prejudice.[117] To show "good cause," a petitioner must demonstrate that an impediment external to the defense prevented him from raising his claims earlier.[118] For example, such

---

[114]*Id.* at 222-23, 523 P.2d at 7 (footnote omitted).

[115]*See id.* at 225, 523 P.2d at 8 (Mowbray, J., dissenting).

[116]*See* NRS 34.810(1) ("The court shall dismiss a petition . . . ."); NRS 34.810(2) ("A second or successive petition must be dismissed . . . ."). We also overrule *Lischko* to the extent that it may be read to suggest that this court "must" review the merits of a post-conviction claim whenever the trial court has elected to do so.

[117]*See* NRS 34.726(1); NRS 34.810(3); *Crump v. Warden,* 113 Nev. 293, 302, 934 P.2d 247, 252 (1997); *Hood v. State,* 111 Nev. 335, 337-38, 890 P.2d 797, 798 (1995).

[118]*Harris v. Warden,* 114 Nev. 956, 959, 964 P.2d 785, 787 (1998).

an impediment might be demonstrated by a showing " 'that the factual or legal basis for a claim was not reasonably available . . . or that "some interference by officials" made compliance [with the procedural rule] impracticable.' "[119] "[A]ctual prejudice" requires a showing " 'not merely that the errors [complained of] created a possibility of prejudice, but that they worked to [the petitioner's] actual and substantial disadvantage, in affecting the state proceeding with error of constitutional dimensions.' "[120]

This court may excuse the failure to show cause where the prejudice from a failure to consider the claim amounts to a "fundamental miscarriage of justice."[121] We have recognized that this standard can be met where the petitioner makes a colorable showing he is actually innocent of the crime or is ineligible for the death penalty.[122] To avoid application of the procedural bar to claims attacking the validity of the conviction, a petitioner claiming actual innocence must show that it is more likely than not that no reasonable juror would have convicted him absent a constitutional violation.[123] Where the petitioner has argued that the procedural default should be ignored because he is actually ineligible for the death penalty, he must show by clear and convincing evidence that, but for a constitutional error, no reasonable juror would have found him death eligible.[124]

Pellegrini does not challenge the district court's determination that his allegations of good cause relating to the effectiveness of counsel rested on the performance of counsel in the first post-conviction proceeding, which cannot excuse Pellegrini's failure to comply with the procedural rules. In any event, there was no merit to this allegation of good cause. Pellegrini filed his first petition in December 1989. At that time, there was no constitutional or statutory right to post-conviction counsel.[125] "Where

---

[119]*Id.* at 959-60 n.4, 964 P.2d at 787 n.4 (quoting *Murray v. Carrier,* 477 U.S. 478, 488 (1986)) (citations omitted).

[120]*Hogan v. Warden,* 109 Nev. 952, 960, 860 P.2d 710, 716 (1993) (quoting *United States v. Frady,* 456 U.S. 152, 170 (1982)).

[121]*Mazzan v. Warden,* 112 Nev. 838, 842, 921 P.2d 920, 922 (1996); *Hogan,* 109 Nev. at 959, 860 P.2d at 715-16; *cf.* NRS 34.800(1)(b).

[122]*See Mazzan,* 112 Nev. at 842, 921 P.2d at 922; *Hogan,* 109 Nev. at 954-55, 959, 860 P.2d at 712, 715-16.

[123]*Schlup v. Delo,* 513 U.S. 298, 327 (1995) (quoting *Carrier,* 477 U.S. at 496).

[124]*Sawyer v. Whitley,* 505 U.S. 333, 336 (1992); *Hogan,* 109 Nev. at 960, 860 P.2d at 716.

[125]*See McKague v. Warden,* 112 Nev. 159, 163-65, 912 P.2d 255, 257-58

there is no right to counsel there can be no deprivation of effective assistance of counsel and hence, 'good cause' cannot be shown based on an ineffectiveness of post-conviction counsel claim.''[126] Therefore, we conclude that the district court did not err in determining an evidentiary hearing was not warranted on these allegations.

To demonstrate error, Pellegrini focuses on his assertions of incompetence and insanity. He contends these assertions are sufficient to warrant an evidentiary hearing on the issues of whether he has demonstrated good cause for his failure to comply with the procedural rules and whether application of the procedural bars would cause a fundamental miscarriage of justice due to his actual innocence by reason of insanity. He further argues that the district court erred in applying the law of the case doctrine to bar consideration of these claims. We conclude that the law of the case doctrine was not applicable under the circumstances presented here. However, we further conclude that Pellegrini failed to show good cause or show a fundamental miscarriage of justice would result from application of the procedural bars, and that an evidentiary hearing was not warranted. Therefore, we affirm the district court's decision to deny relief.[127]

Under the law of the case doctrine, issues previously determined by this court on appeal may not be reargued as a basis for habeas relief.[128] In concluding that the law of the case precluded consideration of Pellegrini's allegations of incompetence and insanity to prove good cause or a fundamental miscarriage of justice, the district court relied on the prior denial of claim 1(e) of Pellegrini's first petition. That claim alleged that trial "counsel failed to investigate and present evidence to negate the culpability and mens rea of [Pellegrini] . . . and failed to file a Motion to

---

(1996) (holding that there is no constitutional right to effective assistance of counsel except where state law entitles one to the appointment of counsel); *accord Bejarano,* 112 Nev. at 1469-71, 929 P.2d at 924-25; *cf. Crump,* 113 Nev. at 302-05, 934 P.2d at 252-54. In 1989, NRS 177.345(1) provided only for discretionary appointment of counsel. *See* 1987 Nev. Stat., ch. 539, § 42, at 1230. This statute was repealed in 1993. 1991 Nev. Stat., ch. 44, §§ 31-33, at 92. NRS 34.820(1) now provides for mandatory appointment of counsel for the first post-conviction petition challenging the validity of conviction or sentence where the petitioner has been sentenced to death. In other cases, NRS 34.750(1) provides for discretionary appointment of counsel.

[126]*McKague,* 112 Nev. at 164-65, 912 P.2d at 258; *see also Mazzan,* 112 Nev. at 841-42, 921 P.2d at 921-22.

[127]*See Franco v. State,* 109 Nev. 1229, 1241, 866 P.2d 247, 255 (1993) (stating that this court will affirm the correct result of the district court's ruling even on different grounds).

[128]*See McNelton v. State,* 115 Nev. 396, 414-15, 990 P.2d 1263, 1275 (1999).

Dismiss for the loss of such evidence by the State.'' The claim was unsupported by any specific factual assertions. It did not refer to incompetence or insanity based on MPD. Furthermore, it appears that all other claims raised in the petition, to the extent that they alluded to Pellegrini's *mens rea,* addressed only Pellegrini's alleged intoxication at the time of the crime. The district court denied claim 1(e) without a hearing. On appeal from the denial of the first petition, we determined that this claim was among a group of claims of ineffective assistance of counsel which were properly denied as "either 'naked' claims for relief or . . . repelled by the record."[129] We did not decide whether any evidence showed that Pellegrini suffered from MPD, was incompetent at any time in the proceedings, or had a viable defense of insanity. Nor did we determine whether allegations that Pellegrini suffered from MPD might constitute good cause to excuse the failure to comply with procedural rules or whether application of procedural bars to these claims would cause a fundamental miscarriage of justice. Thus, our determination on appeal from the denial of the first petition established no law of the case governing these matters.[130]

Still, the only support for Pellegrini's claims is the declaration in support of his petition given by Dr. Riley. The declaration states that Dr. Riley interviewed Pellegrini and conducted a battery of neuropsychological tests on him in April and May of 1997; obtained anecdotal evidence from Pellegrini, his friends and family members regarding behavioral abnormalities and traits Pellegrini displayed as a child and young adult; and obtained records from a 1985 neurological evaluation wherein Pellegrini was diagnosed with "migraine related to a stress situation." The declaration further states that Dr. Riley obtained partial records from Pellegrini's three pretrial mental health evaluations,[131] including Dr. David Kessler's evaluation. Dr. Riley states:

> Dr. Kessler concluded that Mr. Pellegrini's behavior at the time of the crime was "consistent with loss of behavioral control, including an explosive outburst of anger." Dr. Kessler went on to state that "at the time in question, the defendant was not suffering from any type of psychiatric dis-

---

[129]*Pellegrini,* Docket No. 22874 (Order Dismissing Appeal at 2-3, May 28, 1993).

[130]*Cf. Lay v. State,* 116 Nev. 1185, 1200 n.4, 14 P.3d 1256, 1266 n.4 (2000).

[131]Dr. Riley's reference is the only indication in the record of the content of any pretrial evaluation. Despite the relevant nature of these evaluations, neither Pellegrini nor the State has provided this court with any documentation related to them.

order which precluded his understanding of the nature and quality of his actions or their wrongfulness, or rendered him incapable of forming the requisite intent to carry out the offenses.''

Based on the above information, Dr. Riley ''was able to draw some preliminary conclusions'' and was of the opinion that at the time of the offense, ''Pellegrini suffered from a severe psychiatric disorder, which . . . is referred to as a dissociative disorder.''[132] Dr. Riley explained that the ''essential feature of a dissociative disorder is a disruption in the usually integrated functions of consciousness, memory, identity or perception of the environment.'' Dr. Riley opined that ''an accurate diagnosis of dissociative disorder at the time of trial would have assisted the jury in determining the defendant's level of criminal responsibility and could have been viewed as important mitigating evidence.'' However, Dr. Riley cautioned, ''[M]y sub-specialty of neuropsychology is far afield from the area of dissociative disorders. Because of my lack of experience in assessing disorders of this nature, definitive diagnosis should be made by an expert who is competent to conduct the specialized evaluation and interview techniques particular to this rare type of disorder.''

The evidence presented through this declaration falls far short of demonstrating good cause for Pellegrini's delay in bringing his new claims for relief or for reraising previous claims. Although Pellegrini contends that he was incompetent and insane at the time of the crimes and throughout the prior proceedings, the declaration fails to set forth facts to demonstrate how Pellegrini's mental state related to any impediment in asserting the grounds for relief now raised in the second petition.[133]

Pellegrini further argues that because he suffered from MPD at the time of the crime, he was legally insane and therefore meets the actual innocence standard for purposes of determining whether a fundamental miscarriage of justice will result from the failure to consider his second petition on the merits. We note that reasonable jurists have disagreed on whether proof of legal insanity satisfies the actual innocence benchmark of the fundamental miscarriage of justice exception.[134] Furthermore, other courts have

---

[132]Though Dr. Riley does not use the phrase ''multiple personality disorder,'' we assume for the limited purpose of this discussion that Dr. Riley's opinion was that Pellegrini suffered from MPD, which has been recognized as a dissociative disorder. *See Medlock v. State,* 887 P.2d 1333, 1340 & n.9 (Okla. Ct. Crim. App. 1995).

[133]*Cf. Ford v. Warden,* 111 Nev. 872, 881, 901 P.2d 123, 128-29 (1995); *Phelps v. Director, Prisons,* 104 Nev. 656, 660, 764 P.2d 1303, 1306 (1988).

[134]*Compare Britz v. Cowan,* 192 F.3d 1101, 1103 (7th Cir. 1999) (holding

recognized that whether proof of MPD may satisfy the definition of legal insanity is one involving considerable controversy.[135] We need not determine either issue here. Even assuming Pellegrini suffered from MPD at the time of the crime, he has set forth no facts to show that he was legally insane due to this condition, *i.e.,* that he labored under a delusion so great at the time of his crimes that he was robbed of the ability to understand what he was doing or deprived of the ability to appreciate his actions were wrong and unlawful.[136] Dr. Riley's declaration provides no support for a conclusion that Pellegrini was legally insane at the time of the crime, and, although it acknowledges the previous evaluation by Dr. Kessler, it fails to rebut Dr. Kessler's conclusion indicating that Pellegrini did not meet the test for legal insanity at the time of the crime.

Accordingly, we conclude that Pellegrini failed to allege a sufficient basis to show good cause to excuse the procedural bars or to conclude that a fundamental miscarriage of justice would occur from the failure to consider his claims for relief on the merits. The district court did not err in declining to conduct an evidentiary hearing on these issues.

## CONCLUSION

We conclude that Pellegrini is not entitled to relief in this appeal,[137] and we affirm the district court's order denying his untimely and successive petition for a writ of habeas corpus.

---

that a defendant who is insane at the time of the offense is actually innocent for purposes of the fundamental miscarriage of justice test), *cert. denied,* 529 U.S. 1006 (2000), *with Weldon v. Wyoming Department of Corrections,* 963 F. Supp. 1098, 1103 (D. Wyo. 1997) (stating "it is very questionable whether legal innocence because of insanity could constitute actual innocence"), *aff'd,* 127 F.3d 1110 (10th Cir. 1997).

[135]*See, e.g., Medlock,* 887 P.2d at 1342 n.12; *State v. Wheaton,* 850 P.2d 507, 509 (Wash. 1993).

[136]*See Finger v. State,* 117 Nev. 548, 556-57, 27 P.3d 66, 72 (2001) (stating M'Naghten test for legal insanity followed in Nevada).

[137]We have considered Pellegrini's claims related to the adequacy of the district court's findings of fact and conclusions of law and his claims related to whether he was denied any rights by the procedure followed in the district court. We conclude that these claims lack merit and do not warrant further discussion.